IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHETMANY RATSAMY | : | CIVIL ACTION |
| | : | No. 12-3400 |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Acting | : | |
| Commissioner of Social Security[1] | : | |

O'NEILL, J.                                             August 19, 2013

### MEMORANDUM

Plaintiff Phetmany Ratsamy seeks review of the Social Security Commissioner's decision denying her claim for supplemental social security income benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383. I referred plaintiff's case to United States Magistrate Elizabeth T. Hey for a Report and Recommendation[2] and on May 30, 2013, Judge Hey recommended that the final decision of the Commissioner be affirmed. Dkt. No. 10. Plaintiff filed timely objections to the Report and Recommendation, Dkt. No. 11, to which defendant filed a response, Dkt. No. 11, and plaintiff filed a reply, Dkt. No. 12. For the reasons that follow I will adopt Judge Hey's Report and Recommendation as modified by this opinion, overrule plaintiff's objections and affirm the final decision of the Commissioner.

### STANDARD OF REVIEW

The background of this case and the applicable standard of review are set forth in detail in the Report and Recommendation and will be recited here only as necessary to address the issues presented by plaintiff's objections. In assessing plaintiff's objections, I must evaluate de

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of the Social Security Administration. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, in her official capacity only, is substituted as the defendant in this matter.

[2] A district court judge may refer an appeal of a decision of the Commissioner to a magistrate judge. See 28 U.S.C. § 636(b)(1).

novo those portions of the Report and Recommendation to which objection has been made.[3]  28

U.S.C. § 636(b)(1)(C).  I may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  Id.; see also Brophy v. Halter, 153 F. Supp. 2d

667, 669 (E.D. Pa. 2001).

　　　　Plaintiff's claim for social security disability benefits was denied on September 22, 2010.

See Dkt. No. 10 at 4.  The issue to be addressed on her appeal from a denial of benefits is

whether the decisions of the administrative law judge are supported by substantial evidence.

Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  (citation

and internal quotation marks omitted).  "It is less than a preponderance of the evidence but more

than a mere scintilla."  Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114,

117 (3d Cir. 1995).  "Overall, the substantial evidence standard is deferential and includes

deference to inferences drawn from the facts if they, in turn, are supported by substantial

evidence."  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).

Where the ALJ's factual findings are supported by substantial evidence, I am bound by them

even if I would have reached different conclusions.  See Fargnoli v. Massanari, 247 F.3d 34, 38

(3d Cir. 2001).  A reviewing court may not "[w]eigh the evidence or substitute [its own]

conclusions for those of the fact-finder."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.

2005).

---

[3]　　　　Plaintiff's objections to the Report and Recommendation essentially reassert
issues already presented to the Magistrate Judge.  The Court of Appeals has explained that "any
appeal to a district court based on an objection to a Magistrate Judge's order will rehash
arguments presented to and considered by the Magistrate Judge.  That is – by definition – the
very nature of review."  Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011).  "[T]he standard
district courts should apply to such objections is de novo."  Id.  Accordingly, I will evaluate each
of plaintiff's objections on their merits.

**DISCUSSION**

I.      **Plaintiff's Vision**

        A.      **Severe Impairment**

        In her brief in support of her request for review of the Commissioner's decision, plaintiff argued that her "[u]nilateral blindness is a significant limitation of vision as a matter of simple common sense."  Dkt. No. 6 at 5.  Plaintiff objects that the Report and Recommendation is in error because it agrees with the Administrative Law Judge's conclusion that plaintiff's impaired vision does not constitute a severe impairment.  Dkt. No. 11 at 1.  Judge Hey's Report and Recommendation finds that there was "substantial evidence for the ALJ's conclusion that Plaintiff's right eye impairment is not severe."  Dkt. No. 10 at 15-16.  I agree with Judge Hey's conclusion, but apply modified reasoning in reaching this result.

        The ALJ found that plaintiff's vision impairment did not meet the requirements set forth in the second step of the sequential evaluation of plaintiff's work and medical history that was required to determine her eligibility for benefits.[4]  See 20 C.F.R. § 416.920.  Plaintiff bears the burden of proof for step two, Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000), which requires her to prove that she has a "severe impairment . . . or combination of impairments which significantly limits her physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  "[B]asic work activities" are "the abilities and aptitudes necessary to do most jobs," including the capacity for seeing.  20 C.F.R. § 416.921(b).  "An impairment or combination of impairments is not severe if it does not significantly limit [plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).

        ---

        [4]      "The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004)

Considering whether plaintiff's vision impairment was sufficient to meet the requirements of the second step analysis, the ALJ noted a form submitted by Dr. Kahn Che, plaintiff's primary care physician, on which Dr. Che noted that plaintiff's corrected vision was 20/20 in both eyes.  Tr. 140.  Dr. Che's note also reported that plaintiff did not show "clinical signs of visual field restrictions."  Id. at 217.  In her report and recommendation, Judge Hay found that "Dr. Che's most recent assessment of Plaintiff's vision with correction provides substantial evidence for the ALJ's conclusion that Plaintiff's right eye impairment is not severe." Dkt. No. 10 at 15-16.  Standing alone, I find that Dr. Che's assessment of plaintiff's vision does not constitute substantial evidence for his finding that her vision impairment was not severe. However, viewing Dr. Che's assessment together with the other record evidence related to plaintiff's vision, there is substantial evidence to support the ALJ's conclusion that plaintiff did not meet her burden to show that her vision impairment was a "severe impairment."

When she was asked at her administrative hearing about Dr. Che's note that she had perfect vision in both eyes, plaintiff responded that her right eye was "blurry" and that her left eye was "good," but that if she turned off the lights she could not see.  Tr. 325.  Asked whether she had glasses, she responded "Yes.  Reading glasses."  Id.  She had nothing further to say about her vision.  Id.  The ALJ's decision also notes that that when plaintiff was consultatively examined by Dr. Karen J. Nichols in September 2003, plaintiff's "visual acuity was 20/50 on the left and none on the right without glasses."  Id. at 139.  Similarly, although not specifically mentioned in the ALJ's decision, Dr. Goldstein opined that plaintiff could "read with the left eye but not with the right."  Id. at 83.  While Dr. Goldstein indicated that plaintiff should be seen by an ophthalmologist, id. at 85, the only evidence in the record that she visited an eye doctor is plaintiff's comment at an August 24, 2010 hearing before the ALJ that she "transferred to an eye

doctor like you recommended." Id. at 330.  There are no medical records from an eye doctor in evidence.  The administrative record clearly establishes that plaintiff's left eye vision was not severely impaired.  And plaintiff provides no citations to the record in support of her assertion that her right eye vision was uncorrectable with glasses.[5]

Further, and importantly, plaintiff "presented no evidence as to how h[er] visual impairment might limit h[er] ability to do any job."  Florence v. Astrue, No. 06-4571, 2008 WL 564871, at *6 (Feb. 29, 2008) (finding that "the ALJ was not required to evaluate [the plaintiff's impaired vision] at any length as there [was] no evidence that it prevent[ed] Plaintiff from doing any type of substantial gainful activity").  Beyond the comment that she was unable to see when lights were turned off, plaintiff submitted no testimony regarding her vision's impact on her ability to do basic work activities.  See Tr. at 100-115 (transcript of October 2008 administrative hearing); id. at 314-326 (transcript of March 2007 administrative hearing).  "[I]t is well settled that disability is not determined merely by the presence of a diagnosed impairment, but by the effect that the impairment has upon the individual's ability to perform substantial gainful activity."  Van Mook v. Astrue, No. 10-876, 2011 WL 3875527, at *2 (W.D. Pa. Aug. 31, 2011), citing, Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991); see also D'Arrigo v. Barnhart, No. 05-5394, 2006 WL 2520524, at *4 (E.D. Pa. Aug. 23, 2006) (finding the plaintiff "needed more than just evidence of an impairment for it to be considered 'severe,' but rather she also needed evidence of the impairment significantly limiting her ability to do basic work activities).  In his decision, the ALJ explained that "[i]n reaching the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic

---

[5]    To the extent that corrective lenses could restore plaintiff's vision, her vision cannot constitute a severe impairment.  See 20 C.F.R. § 416.930(a) (requiring as a prerequisite to a benefits award that claimant comply with treatment that can restore ability to work, unless there is good reason for non-compliance).

work activities, [he had] considered all symptoms and the extent to which these symptoms can be reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." Tr. 141.  Although the ALJ could have been more thorough in his explanation of the weight accorded to individual pieces of evidence, because there is no evidence in the record to support a conclusion that plaintiff's impaired right eye vision significantly limited her ability to do basic work activities I find that the ALJ correctly found that plaintiff did not meet her burden to establish that her vision impairment constituted a severe impairment at step two of the analysis.  I will overrule plaintiff's first objection.

> ### B.     Relevance of Vocational Expert's Testimony

In his determination of benefits, the ALJ wrote that "[t]he claimant's monocular vision is considered not severe.  Even the vocational expert testified that vision is only relevant in highly skilled jobs.  There are few precision jobs that require depth perception.  It has virtually no impact on unskilled jobs."  Id. at 140.  Plaintiff objects that the ALJ improperly relied on the testimony of the vocational expert to find that Plaintiff's vision impairment was not severe and further, that his testimony did not support the ALJ's finding that her vision impairment was not severe and was inconsistent with the Dictionary of Occupational Titles.  Dkt. No. 11 at 3-5.  Like Judge Hey, I "agree with Defendant that the VE's testimony was irrelevant."  Dkt. No. 10 at 17.

Vocational expert testimony is not required to inform an ALJ's decision at step two.  See 20 C.F.R. § 416.960 (providing that the Social Security Commissioner "will consider your residual functional capacity together with your vocational background" if the Commissioner "cannot decide whether you are disabled at one of the first three steps of the sequential evaluation process").  To the extent that his decision shows that the ALJ considered the vocational expert's opinion in reaching his finding at step two, I find that any such consideration

was harmless given the lack of record evidence to support plaintiff's claim that her right-eye

vision impairment significantly limited her ability to do basic work activities.  Remand is not

necessary when it would not affect the outcome of the case.  See Rutherford v. Barnhart, 399

F.3d 546, 553 (3d Cir. 2005).  I cannot sustain plaintiff's second and fourth objections (Dkt. No.

11 at 3-4).

      **C.**    **Social Security Ruling 85-15**

      I also decline to sustain plaintiff's third objection in which she contends that Judge Hey

disregarded her argument that "the vocational expert's testimony was inconsistent with Social

Security Ruling 85-15," Dkt. No. 11 at 3, which provides, inter alia, that

> even if a person's visual impairment(s) were to eliminate all jobs
> that involve very good vision . . . , as long as he or she retains
> sufficient visual acuity to be able to handle and work with rather
> large objects (and has the visual fields to avoid ordinary hazards in
> a workplace), there would be a substantial number of jobs
> remaining across all exertional levels.  However, a finding of
> disability could be appropriate in the relatively few instances in
> which the claimants vocational provide is extremely adverse, e.g.,
> closely approaching retirement age, limited education or less,
> unskilled or no transferable skills, and essentially a lifetime
> commitment to a field of work in which good vision is essential.

SSR 85–15, 1985 WL 56857, at *8.  Judge Hey "reject[ed] the Plaintiff's argument that the

ALJ's decision ran afoul of Social Security Ruling 85-15," finding that "Ruling 85-15 is

inapplicable."  Dkt. No. 10 at 17-18.

      The analysis set forth in Ruling 85-15 comes into play at step five of the sequential

evaluation, not at step two, as is explained in the Report and Recommendation.  Dkt. No. 10 at

17.  At its outset, Ruling 85-15 provides that "*[i]f a person has a severe medically determinable*

*impairment* which, though not meeting or equaling the criteria in the Listing of Impairments,

prevents the person from doing past relevant work, it must be determined whether the person can

do other work." SSR 85–15, 1985 WL 56857, at *1 (emphasis added). The Ruling thus

provides guidelines to be applied *after* it has already been determined at step two that a claimant

has a severe impairment. Accordingly I agree with Judge Hay that it was not necessary for the

ALJ to consider Ruling 85-15 in making his step two finding that plaintiff did not have a severe

medically determinable right-eye vision impairment and find that his failure to do so does not

require remand.

II.     **Asthma**

   Plaintiff's fifth objection opposes the Report and Recommendation's finding that the ALJ

had substantial evidence to support his conclusion that plaintiff's asthma did not constitute a

severe impairment. Id. at 5; see also Dkt. No. 10 at 19. Her objection, however, does not

identify specific errors in Judge Hey's analysis regarding her asthma. Instead plaintiff asserts

that, as she noted in her initial brief seeking review of the ALJ's decision, "the impairment was

found to be severe in an earlier administrative decision, but was only found to be 'non-severe'

when acknowledging it as 'severe' would concede eligibility for benefits." Dkt. No. 11 at 5.

   For the reasons set forth in the Report and Recommendation, I agree that substantial

evidence supports the ALJ's conclusion with respect to plaintiff's asthma. Plaintiff was

prescribed Albuterol for her asthma, but there is no indication in her doctors' notes that the

prescription did not control her asthma. As Judge Hey explains, "Dr. Che's treatment notes in

2006 and 2007 consistently indicated good breath sounds on examination, and the doctor failed

to note any pulmonary findings in his April 2006 evaluation." Dkt. No. 10 at 19, citing Tr. 213-

17. The only mention of breathing issues in Dr. Bunya's treatment notes between January 2008

and June 2010 was a January 2009 note that plaintiff had a "[b]ad cold. Unable to sleep. [Breath

sounds] not good." Tr. 223. In his report accompanying plaintiff's residual functional capacity

assessment, Dr. Goldstein categorized plaintiff's occasional asthma symptoms as "mild" and

helped by her inhaler.  Id. at 83-85.  Considering the record before the ALJ, there was substantial

evidence that plaintiff did not suffer from severe asthma.  See Pearson v. Comm'r of Soc. Sec.,

No. 07-5581, 2008 WL 2705480, at *2 (D.N.J. July 10, 2008 (finding that asthma was not severe

when the plaintiff suffered from three asthma episodes per month not requiring hospitalization

and there were periodic findings that her chest and lungs were normal); Thomas v. Astrue, No.

08-632, 2008 WL 4589751, at *2 (E.D. Pa. Oct. 15, 2008) (finding no severe asthma where

plaintiff's condition was controlled by inhalers and resulted in only a mild reduction in lung

capacity); Charlton v. Banhart, 39 F. Supp. 2d 295, 304 (D. Del. 2005) (finding asthma was not

severe when controlled by medication with no "flare-ups").  I will overrule plaintiff's fifth

objection.

### III.    Medical Opinion Evidence

The Report and Recommendation finds that the ALJ properly considered available

medical opinion evidence from Dr. Che, plaintiff's treating physician and from Dr. Goldstein, a

consultative examiner.  Dkt. No. 10 at 21-24.  Plaintiff's sixth objection opposes Judge Hey's

conclusion, arguing that the Report and Recommendation "does not refute Plaintiff's claim that

the ALJ improperly substituted his lay judgment on medical matters for that of competent

physicians."  Dkt. No. 11 at 5.  Despite plaintiff's conclusory objections, I agree with Judge Hey

that substantial evidence supports the ALJ's assessment of the medical opinion evidence and I

will overrule plaintiff's sixth objection.

Dr. Che was plaintiff's treating physician.  The ALJ, however, gave little weight to Dr.

Che's medical source statement, which concluded that plaintiff had a residual functional capacity

for less than sedentary work, finding that it was not supported by the records he kept.  Tr. 76-77,

139.  As the ALJ explained, id. at 139, the medical source statement form contained no response to a question regarding what impairment or impairments caused the noted limitations.  Id. at 77.  Further, the other records supplied by Dr. Che, id. at 213-220, support the ALJ's remarks that "there did appear to be no limitations in exams of the extremities," exams of plaintiff's lungs were "always 'good,'" "[h]er diabetes mellitus was controlled," "[h]er blood pressure readings were all within normal limits," she "had a normal balance and gait," and her "corrected vision was 20/20 in both eyes."  Id. at 140.  Substantial evidence supports a conclusion that the ALJ properly considered Dr. Che's opinions.

Dr. Goldstein was not plaintiff's treating physician.  The ALJ concluded that his neurological findings were not in any other medical record and "[a]lthough Dr. Goldstein offered a residual functional capacity for sedentary work, the physical exam was completely normal." Id. at 139.  Dr. Goldstein reported no significant musculoskeletal or neurological findings.  Id. at 83-85.  He noted that her breath sounds were only "slightly decreased on both sides" and that her "diaphragm moves normally."  Id. at 84.  He reported that plaintiff had "mild" asthma.  Id. at 85.  Further, although the ALJ's decision does not explicitly reference Dr. Goldstein's note that plaintiff could "read with the left eye but not with the right," id. at 83, the ALJ's assessment of plaintiff's vision is not inconsistent with Dr. Goldstein's assessment that plaintiff "need[ed] an opthamology examination."  Id. at 85.  I find that substantial evidence supports a conclusion that the ALJ properly considered Dr. Goldstein's opinions.

IV.  **Plaintiff's Testimony**

Finally, plaintiff seventh objection takes exception to the Report and Recommendation's finding that the ALJ adequately explained his rejection of plaintiff's testimony.  Dkt. No. 11 at 5-6.  In particular, plaintiff objects to the report and recommendation's consideration of the ALJ's

assertion that "the medical findings were unremarkable." Id. at 6.  She contends that the

assertion is "objectionable because it fails to heed the principle that a claimant's testimony

regarding symptoms will not be rejected solely because objective medical evidence fails to

substantiate the severity of the symptoms." Id. citing 20 C.F.R. § 416.929(c)(2) ("we will not

reject your statements about the intensity and persistence of your pain or other symptoms or

about the effect your symptoms have on your ability to work solely because the available

objective medical evidence does not substantiate your symptoms").

     An ALJ is required, however, to "evaluate [a claimant's] statements in relation to the

objective medical evidence and other evidence, in reaching a conclusion as to whether [she is]

disabled." 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4); see also Cerrato v. Comm'r of Soc.

Sec., 386 Fed. App'x 283, 286 (3d Cir. 2010) ("The ALJ has discretion to evaluate the credibility

of a claimant and . . . arrive at an independent judgment, in light of medical findings and other

evidence, regarding the true extent of the pain alleged . . . .") (internal quotation marks omitted).

It is therefore within the province of the ALJ to draw a reasonable inference about credibility

when "the level or frequency of treatment is inconsistent with the level of complaints . . . ." SSR

96-7p, 1996 WL 374186, at *7; see also 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4) (providing

that an ALJ shall "consider whether there are any inconsistencies in the evidence and the extent

to which there are any conflicts between [a claimant's] statements and the rest of the evidence").

The Court of Appeals has explained that the regulations "obviously require[] the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

     Reviewing the record I find that substantial evidence supports the ALJ's conclusion that

plaintiff's "statements concerning the intensity; persistence and limiting effects of [her]

symptoms [were] not credible to the extent they are inconsistent with finding that [she] has no severe impairment or combination of impairments." Tr. 141.  In October 2004 she testified that she could not cook for herself, id. at 112, and that she felt that she could not help at home by cleaning or sweeping the floor, id. at 114, but in March 2007, when asked if she did housework, she testified that she cooked "like rice soup," id. at 323, did dishes, id. at 321, swept floors, id. at 323, and took care of grandchildren.  Id. at 324.  Further, as the ALJ concluded, medical evidence showed that plaintiff's diabetes, hypertension and asthma were controlled with medication.  Id. at 140.  Asked about Dr. Che's note that she had perfect vision in both eyes, plaintiff responded that her right eye was "blurry" and that her left eye was "good," but that if she turned off the lights she could not see.  Tr. at 325.  Plaintiff testified that she wore reading glasses, id., did not testify that her vision could not be corrected with glasses, and did not provide testimony that her vision compromised her ability to perform basic work activities.

Because I find that substantial evidence supports the ALJ's evaluation of plaintiff's testimony, I will overrule plaintiff's seventh objection.

An appropriate Order follows.